UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 04-40114-FDS

TIMOTHY L. LaFRENIER,

        Plaintiff

v.

MARY ANNE KINIREY, DANIEL MORRISON,
The CHIEF OF POLICE "John Doe" and the
TOWN OF TOWNSEND,

        Defendants

MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

I.  INTRODUCTION

        In this action, plaintiff Timothy LaFrenier ("LaFrenier") asserts civil rights violations and common-law torts arising from his arrest by Mary Anne Kinirey ("Kinirey") and Daniel Morrison ("Morrison"), police officers for the Town of Townsend ("Town") on June 15, 2001 – an incident of which LaFrenier, by his own admission, has no memory.  Counts I and II of the Complaint, brought pursuant to 42 U.S.C. §1983, assert claims against Kinirey and Morrison for unlawful arrest, excessive force, denial of medical care, and malicious prosecution.  Count III asserts a claim against the Town's Chief of Police; however, plaintiff voluntarily dismissed the Chief of Police on October 20, 2005, and therefore Count III is moot.  See Docket for Case No. 04-40114.  Count IV appears to assert the same substantive civil rights violations as Counts I and II, pursuant to G.L. c. 12, §§H-I, the Massachusetts Civil Rights Act ("MCRA").  Count V asserts a claim for vicarious negligence against the Town, based on the conduct of its officers.  Counts VI through VIII assert intentional tort claims against Kinery and Morrison for assault and battery, false arrest, and abuse of process, respectively.

The within Memorandum is submitted in support of the defendants' motion for summary judgment.

## II.     STATEMENT OF FACTS

The relevant facts underlying this case are set forth in the Defendants' Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment should be entered where the non-moving party has the burden of proof and, based on the record before the Court, "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987).  The moving party may prevail on summary judgment either by submitting affirmative evidence negating an element of the nonmovant's claim, or demonstrating that the nonmovant has no reasonable expectation of proving an element of the claim due to insufficient evidence.  Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998, Keeton, J.).

## IV.     ARGUMENT

A.      Plaintiff Cannot Establish A Claim For Unlawful Arrest[1]

Count I of the Complaint asserts that Kinirey and Morrison violated plaintiff's Fourth Amendment rights by arresting him without probable cause. Complaint, ¶29(a).  Plaintiff admits

---

[1] Defendants address plaintiff's claims under Section 1983 and the MCRA as co-extensive, since both types of claims fail if the plaintiff cannot show that he was deprived of a statutory or constitutional right.  Jiles v. Department of Correction, 55 Mass.App.Ct. 658, 664, 774 N.E.2d 150, 156 (2002) (failure to prove loss of constitutional right of access to the courts negated plaintiff's MCRA claim based on same).

that he has no recollection of the encounter with Kinirey and Morrison which led to his arrest, and therefore cannot dispute the facts of his arrest as set forth by the officers. Statement, ¶2. In a case such as this one, "where the material facts … are not in dispute … the existence vel non of probable cause ordinarily is amenable to summary judgment." Acosta v. Ames Department Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004).

The law regarding warrantless arrest is well established. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 125 S.Ct. 588, 593 (2004); see also Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254 (1996) ("if probable cause to arrest and prosecute … existed, no unconstitutional deprivation occurred"). Probable cause exists if "at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." U.S. v. Bizier, 111 F.3d 214, 217 (1st Cir.1997). The inquiry into probable cause focuses on what the officer knew at the time of the arrest, U.S. v. Brown, 169 F.3d 89, 91 (1st Cir.1999), and should evaluate the totality of the circumstances. U.S. v. Reyes, 225 F.3d 71, 75 (1st Cir .2000).

Moreover, "the probable cause inquiry is not necessarily based upon the offense actually invoked by the arresting officer, but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest." U.S. v. Jones, --- F.3d ---- (1st Cir. 2005) (citing Devenpeck, 543 U.S. 146, 125 S.Ct. 588). In other words, if probable cause exists to arrest for any offense, the arrest is lawful, irrespective of whether probable cause existed for the offense invoked by the officer at the time of arrest. See Jones, supra (fact that booking officer cited suspect for "intent to rob while armed" was "irrelevant" to probable cause inquiry, for "if there

3

was probable cause to believe he was committing another crime, the arrest was valid"); Devenpeck, 543 U.S. 146, 125 S.Ct. 588 (where there was probable cause to arrest driver for impersonating an officer for obstruction of justice, fact that officers arrested driver for unrelated offense – violating the State Privacy Act – did not vitiate lawfulness of arrest); Bizier, 111 F.3d at 218 (1st Cir.1997) ("[p]robable cause need only exist as to any offense that could be charged under the circumstances" (emphasis in original)).

In this case, the undisputed facts prove that Kinirey and Morrison possessed more than sufficient probable cause to arrest plaintiff. Specifically, the record demonstrates that as Kinirey, who was in full uniform at the time, attempted to question plaintiff by the side of the road, plaintiff "pushed" her out of his way in an attempt to return to his car. Statement, ¶23. At this point, Kinirey had probable cause to arrest plaintiff for assault and battery on a police officer, as a matter of law. See Brown, 169 F.3d at 92 (where officer "was pushed by [the suspect] after having identified himself as a police officer … This clearly provided [the officer] with probable cause to believe that [the suspect] had committed an assault and battery on a police officer"). Kinirey's justification for the arrest increased as plaintiff continued to push her, and then began to hit her in the stomach with a closed fist. Id., ¶¶24, 27-28.

Similarly, probable cause existed, as a matter of law, to arrest plaintiff for assault and battery on Morrison, based on the fact that the plaintiff twice elbowed Morrison in the chest (breaking a pair of sunglasses in Morrison's shirt pocket), after Morrison had identified himself as a police officer. Statement, ¶32. The motivation for the plaintiff's actions is irrelevant to whether probable cause existed for his arrest. See Brown, 169 F.3d at 91 (suspect's claim that he pushed officer because he did not know he was an officer, and reasonably feared for his safety, "does not negate the probable cause perceived by" the officer). Therefore, any lack of criminal

4

intent on plaintiff's part "does not invalidate the arrest because it has no impact on the information possessed by [Kinirey and Morrison] at the time of the arrest." Id.

Further, because probable cause existed to arrest plaintiff for assault and battery on a police officer, the arrest is lawful, irrespective of whether probable cause existed for the remaining offenses for which he was arrested – i.e. resisting arrest, suspicion of operating under the influence ("OUI"), and disorderly conduct. See Jones, Devenpeck, Bizier, supra. See also Sholley v. Town of Holliston, 49 F.Supp.2d 14, 18 (D.Mass. 1999, Saris, J.) (an arrest is "a single, indivisible event. If there was probable cause for any of the charges made … then the arrest, of which there was only one, was supported by probable cause"). Therefore, whether probable cause existed for plaintiff's arrest on these offenses is irrelevant to the lawfulness of the arrest.

However, probable cause existed to justify plaintiff's arrest on these charges as well. Specifically, resisting arrest occurs when a person "knowingly prevents or attempts to prevent a police officer … from effecting an arrest … by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another." See G.L. c. 268, §32B. It is undisputed that, as Kinirey attempted to handcuff plaintiff, he struggled with her, repeatedly attempting to disengage himself from her grasp and flee. Statement, ¶26. Plaintiff did, in fact, work his way free, swing toward Kinirey, and repeatedly push and hit her, eventually hitting hit her in the stomach with a closed fist. Id., ¶¶27-28. As the pair struggled they fell to the ground, where plaintiff continued to attempt to punch Kinirey with both hands. Id., ¶¶28-29. It is further undisputed that, as Morrison attempted to arrest plaintiff, the plaintiff twice elbowed him in the chest, and remained "combative" throughout their encounter. Id., ¶¶32-33.

5

These facts demonstrate that plaintiff was using physical force against Kinirey and Morrison, as well as creating a substantial risk of bodily injury to them, in an attempt to prevent his arrest; accordingly, probable cause existed to arrest plaintiff for resisting arrest, as a matter of law.[2]

Similarly, probable cause existed for plaintiff's arrest on suspicion of OUI. The record shows that plaintiff was sweating profusely and his eyes were glassy when Kinirey approached him. Statement, ¶¶10-11. He exhibited a lack of motor skills, failing in his attempts to open a pack of cigarettes, "staggering" as he exited the car, and falling after he stood up. Id., ¶¶11, 18. He was at first unresponsive to Kinirey's requests to open the car window, shut the car engine off, and step out of the vehicle, then became belligerent toward her, insisting that the car engine was off when it was in fact running, asking why Kinirey had stopped him (even though she explained that she had not), asking Kinirey if "she had a problem," and repeatedly stating that "he had to get going." Id., ¶¶11-15, 19-20, 23. The plaintiff was also disoriented: when Kinirey asked if he was aware of his location, he told her that he was in the parking lot of his workplace in Nashua, N.H.. Id., ¶22.

These facts, as a matter of law, would lead a reasonable police officer to believe that an individual was intoxicated. Compare Bizier, 111 F.3d at 218-219 (1997) (probable cause existed for OUI arrest where driver took longer than usual to pull over to the roadside; had glassy eyes, heavy eyelids, and dilated pupils; was swaying; and told conflicting stories about where he'd been). Indeed, Kinirey's belief that plaintiff appeared intoxicated is corroborated by the observation of plaintiff's son, who testified that he had seen his father drunk and, when he saw

---

[2]Although plaintiff's alleged inability to possess the requisite knowledge of the circumstances in which he acted provided a defense to this charge, see Com. v. Lawson, 46 Mass.App.Ct. 627, 708 N.E.2d 148 (1999), it did not negate the officers' reasonable belief that he committed the offense. See Brown, 169 F.3d at 91 (fact that suspect who pushed officer was not aware he was an officer "does not negate the probable cause" to arrest the suspect for assault and battery on an officer).

6

his father shortly after the arrest, "he definitely was showing signs of being drunk." Statement, ¶44. Accordingly, probable cause existed to arrest plaintiff on suspicion of OUI.

Finally, probable cause existed to arrest plaintiff for disorderly conduct, which occurs when a person "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... engages in fighting or threatening, or in violent or tumultuous behavior; or ... creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." Alegata v. Commonwealth, 353 Mass. 287, 231 N.E.2d 201 (1967); see also Abraham v. Nagle, 116 F.3d 11, 13 (1st Cir.1997). "The public element of the offense is readily met in cases where the proscribed conduct takes place on public streets … or by the side of a highway." Com. v. Mulvey, 57 Mass.App.Ct. 579, 582-83, 784 N.E.2d 1138 (2003). The undisputed facts are that the plaintiff struck and struggled with both Kinirey and Morrison on the side of a highway, where traffic was "flowing," and that when he pushed Kinirey, he pushed her in the direction of the traffic. Statement, ¶¶23-33. Plaintiff thus engaged in "fighting behavior" and created a hazardous condition which served no legitimate purpose. Nagle, 116 F.3d at 14 (individual engaged in disorderly conduct when, despite repeated requests to get out of the way during arrest of third party, he circled officers while shouting, at least once got directly in their way, and then refused to move away from the cruiser). Indeed, a number of cases have upheld disorderly conduct arrests where a refusal to obey police orders created a safety threat. See, e.g., Com. v. Mulero, 38 Mass.App.Ct. 963, 650 N.E.2d 360 (1995) (defendant removed hands from cruiser, flailing them in an agitated and belligerent manner while berating officer with loud profanities); Bosk, 29 Mass.App.Ct. at 906-07, 556 N.E.2d 1055 (after receiving speeding ticket, defendant left motor vehicle and walked toward state trooper, loudly demanding to see radar detector, and disregarding trooper's orders to return to his vehicle); Com. v. Carson, 10

Mass.App.Ct. 920, 411 N.E.2d 1337 (1980) ("belligerent" defendant refused officers' request to return home, yelled profanity at officers, then resisted officers' grasp and ran for three to four minutes until apprehended). Accordingly, probable cause existed to arrest plaintiff for disorderly conduct.

    B.    <u>Plaintiff Cannot Establish A Claim For Excessive Force</u>

Count I also asserts that Kinirey and Morrison used excessive force against plaintiff, in violation of the Fourth Amendment. <u>Complaint</u>, ¶29(b). When analyzing a claim of excessive force, "[t]he pertinent question is whether the force used was 'objectively reasonable' under all the circumstances; that is, whether it was consistent with the amount of force that a reasonable police officer would think necessary to bring the arrestee into custody." <u>Gaudreault</u> v. <u>Municipality of Salem</u>, 923 F.2d 203, 205 (1st Cir.1990). In making this inquiry, the Court considers: (1) the severity of the crime, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether he was actively resisting arrest or attempting to evade arrest by flight. <u>Id.</u> (citing <u>Graham</u> v. <u>Connor</u>, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989)). The Court "must keep in mind that not every push or shove rises to the level of a constitutional violation, and that police officers making arrests are often forced to make split-second decisions about the amount of force needed to effect an arrest while operating under tense, dangerous and rapidly-changing circumstances. <u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 393-94, 109 S.Ct. 1865).

As noted, plaintiff does not recall the circumstances of his arrest and therefore cannot dispute the facts of same as set forth by Kinirey and Morrison. These facts show that, after plaintiff proved unresponsive to Kinirey's questions and simple directives, he told Kinirey that he "had to get going" and attempted to return to his car. <u>Statement</u>, ¶23. At that point, Kinirey issued a verbal command to plaintiff that "he wasn't going anywhere." <u>Id</u>. Plaintiff then

8

initiated a physical confrontation, pushing Kinirey in an attempt to leave the scene in defiance of Kinirey's directive to stay. Id. When plaintiff pushed Kinirey, he pushed her in the direction of highway traffic. Id., ¶24. Kinirey responded by attempting to handcuff plaintiff, turning him to the car and bringing his arm behind his back. Id., ¶25. As Kinirey attempted to cuff plaintiff, he struggled, repeatedly attempting to disengage himself from her grasp and flee. Id., ¶26. Plaintiff did, in fact, work his way free, swing toward Kinirey, and resume pushing and hitting her. Id., ¶27. As plaintiff "flailed around," the loose handcuff, with its open hook, flailed around with him. Id. As Kinirey attempted to push plaintiff back down, he began to hit her in the stomach with a closed fit. Id., ¶28. Kinirey responded by striking plaintiff in the thigh area with her knee. Id. The pair then fell to the ground, where plaintiff continued to attempt to punch Kinirey with both hands, while Kinirey tried to restrain plaintiff with knee blows to the leg. Id., ¶29.

     Morrison then arrived on the scene, responding to Kinirey's earlier call for backup, and observed Kinirey "rolling around, wrestling" with plaintiff. Statement, ¶¶30-31. Morrison ran to the pair, picked plaintiff up off the ground, identified himself as a police officer, and started to walk plaintiff towards his car. Id., ¶32. At that point, plaintiff began to flail his arms, twice elbowing Morrison in the chest and breaking a pair of sunglasses in Morrison's shirt pocket. Id. Morrison gained control of plaintiff by grabbing his arms, placing him over the vehicle, bringing his arms behind him, and applying handcuffs, after which he placed LaFrenier into a cruiser. Plaintiff remained "combative" throughout his encounter with Morrison. Id., ¶33.

     Neither Kinirey nor Morrison drew a gun on plaintiff, punched or kicked him, or used a chemical agent on him. Statement, ¶¶34-35. Plaintiff claims that following the incident, Kinirey told him that she used her nightstick on him; while Kinirey disputes this uncorroborated

9

statement, the defendants concede the fact for purposes of this motion only. Id., ¶34. There is no evidence that Morrison drew his nightstick on plaintiff.

No reasonable factfinder could find that Kinirey and Morrison's actions were unreasonable under the circumstances. Plaintiff clearly posed an immediate threat to the safety of the officers and others, as he engaged the officers in a physical struggle on the side of a highway. He was also actively resisting arrest and attempting to flee.

The officers responded to plaintiff's actions in accordance with training they had received in the "force continuum," a guide to the proper amount of force to be used in effecting a lawful arrest. The continuum, which is based on the principle that an officer should use only the minimum force necessary for self-defense and to effect a lawful arrest, instructs officers on the different types of force available and when it is appropriate to use each type of force. Statement, ¶¶46-47. Pursuant to the continuum, an officer attempting to subdue a resistant suspect should use verbal commands, then escalate to physical maneuvers, including knee strikes, and then, if the suspect is still resisting, use a nightstick. Id., ¶47 Kinirey's actions here accorded with the continuum – i.e. a verbal command, then knee strikes in response to plaintiff's punches and, allegedly, use of a nightstick. That Kinirey used no greater force than necessary to subdue the plaintiff is demonstrated by the fact that her actions, including the alleged use of her nightstick, were <u>insufficient</u> to subdue plaintiff, as it is undisuputed that plaintiff was still resisting arrest when Morrison arrived on the scene to find plaintiff "rolling around, wrestling" with Kinirey. Id., ¶31.

The officers' actions in this case are strikingly similar to those that the Court deemed "objectively reasonable as a matter of law" in Gaudreault, supra. In that case, a police officer attempted to lead an intoxicated and disruptive patron out of a bar, after the patron refused

requests to leave the premises. When the officer placed a hand on the suspect, the suspect flailed his arm away, striking the officer in the face and forcing him to fall backwards, then continued to resist when another officer moved in to assist, eventually bringing the struggle to the floor and slamming an officer's head into the bar before he was subdued. Noting that the officers never used their guns or clubs, and the suspect displayed no physical injuries when arrested, the Court held that "the officers can only be said to have tailored their expense of force closely to the violent circumstances facing them." Gaudreault, 923 F.2d at 206.

Similar to the circumstances in Gaudreault, the plaintiff here actively resisted arrest, yet the officers did not draw their weapons nor inflict any treatable injury on him. As such, the officers' use of force was reasonable as a matter of law, and summary judgment should enter on plaintiff's excessive force claim.

C. Plaintiff Cannot Establish a Claim for Denial of Medical Care

Count I further asserts that Kinirey and Morrison denied plaintiff necessary medical care. Complaint, ¶29(c). A pre-trial detainee's right to medical care is guaranteed by the Due Process clause of the Fourteenth Amendment, see Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir.2002); however the standard to be applied to a pre-trial detainee's claim for denial of medical care "is the same as that used in Eighth Amendment cases" involving convicted prisoners. Burrell, 307 F.3d at 7 (citing Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861 (1979)).

"The Eighth Amendment, in turn, imposes a duty to attend to a prisoner's 'serious medical needs.'" Gaudreault, 923 F.2d at 208 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976)). A "serious" medical need is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault, 923 F.2d at 208. "Government officials violate the

11

Constitution if they exhibit 'deliberate indifference' to such needs." Id. (quoting Estelle, 429 U.S. at 106, 97 S.Ct. 285). In order to establish deliberate indifference, the plaintiff must prove that the officers "had a culpable state of mind and intended wantonly to inflict pain." DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir.1991) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321). "The requisite state of mind may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care." Id. (citing Estelle, 429 U.S. at 104-05, 97 S.Ct. 285). The requisite mental state is akin to that required in the criminal-law context, "requiring actual knowledge of impending harm, easily preventable." Id. (citing Wilson, 501 U.S. at 298, 111 S.Ct. 2321). "Inadvertent failures to provide medical care, even if negligent, do not sink to the level of deliberate indifference." Id. (citing Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078 (1986)).

The undisputed facts cannot support a claim that the defendants were deliberately indifferent to plaintiff's serious medical needs. First, the evidence proves that plaintiff clearly did not suffer a "serious" medical need, since the doctor who treated him following his arrest diagnosed nothing wrong with him. Statement, ¶42. The doctor did not diagnose plaintiff with any condition or injury requiring medical treatment, nor did he proscribe him any medication. Id. At no time did plaintiff require or receive any medical treatment, either for the alleged condition he was suffering at the time of his encounter with the officers, or any alleged injuries he received during the encounter. Id., ¶43.[3] Since medical professionals did not detect any need for medical treatment, it necessarily follows that plaintiff did not have a need for treatment that was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault, 923 F.2d at 208. Thus, plaintiff cannot show that he suffered a "serious

---

[3] After plaintiff's release, an examination detected a high white cell count in plaintiff which, according to plaintiff, indicated a viral infection. Statement, ¶43, n.3. Plaintiff did not receive treatment for this condition.

12

medical need," and summary judgment should enter on his due process claim on this basis alone. Compare Gaudreault, 923 F.2d at 208 (detainee who suffered a "blow out fracture of the right orbit, resulting in a deviated septum, a cyst in his sinus and some transient nerve damage" did not have a "serious medical need" supporting a constitutional claim.)

Nor does the evidence permit a finding that the defendants were "deliberately indifferent" to plaintiff's medical needs, regardless of seriousness. It is undisputed that Kinirey asked plaintiff if he required medical attention several times during their encounter on the street, beginning when she first approached him and continuing after she ordered him out of his vehicle. Statement, ¶¶13, 15, 21. The plaintiff repeatedly refused these offers of medical attention. Id. Nonetheless, Kinirey continued to try to extract information from plaintiff about his condition, until he pushed her and instigated the struggle that resulted in his arrest. Id., ¶23. Morrison, who arrived on the scene as plaintiff and Kinirey struggled, had no opportunity to determine whether plaintiff required medical care, as he was assaulted by plaintiff immediately after separating him from Kinirey. Id., ¶32. These facts show that, to the extent plaintiff may have required any medical assistance, it was his own actions that prevented him from receiving such assistance at the scene of his arrest.

The evidence further shows that, following plaintiff's arrest, the defendants continued to demonstrate concern for his medical condition. Specifically, while he was being booked, Kinerey, Morrison and a supervising officer questioned plaintiff about his medical condition, and asked him if there was "somebody we could call" for him. Statement, ¶36. Plaintiff responded that "he didn't have a medical condition and he wasn't on any medication." Id. After a breathalyzer test showed plaintiff had not been drinking, the officers again asked if he wanted medical assistance, and suggested that an ambulance be called. Id., ¶¶38-39. Plaintiff declined

13

an ambulance, and suggested the officers speak with his wife. Id., ¶39.[4] Although plaintiff could not provide a phone number for his wife, Kinirey tracked her down by telephone and spoke with her at length about her husband's condition. Id., ¶40. Afterwards, plaintiff agreed to have an ambulance called, and one was summoned. Id.

As a matter of law, these actions, undisputed by plaintiff, do not demonstrate a "denial, delay or interference with prescribed health care." DesRosiers, 949 F.2d at 19. To the extent plaintiff suggests that the defendants' failure to summon medical assistance "at the scene" of his arrest comprises an unreasonable delay in seeking medical treatment, such an argument is unavailing. Complaint, ¶29(a). First, as noted, any delay in securing assistance for plaintiff was due to his own repeated rejection of offers of such assistance. Second, the brief time that passed between plaintiff's encounter with Kinirey on Route 13, and his transport to the hospital from the police station, is insufficient to sustain a claim that the defendants unreasonably delayed in seeking medical care, since the delay did not exacerbate any injury or condition. Gaudreault, 923 F.3d at 208 (no constitutional violation where arrestee asked for, but was refused, medical attention for a period of some ten hours after his arrest, since "nothing in the record suggest[s] that [the arrestee's] injuries were exacerbated in the slightest by the delay in providing treatment"). As such, plaintiff cannot establish that the defendants violated his right to medical care and, accordingly, summary judgment should enter on this additional basis.

D. Plaintiff Cannot Establish a Claim for Malicious Prosecution

Count II of the Complaint asserts that Kinirey and Morrison engaged in malicious prosecution. Complaint, ¶31(a). Plaintiff was prosecuted on two charges of assault and battery

---

[4] Plaintiff testified he does not remember giving the officer his wife's name. However, it is undisputed that plaintiff's wife told their adult son that the police had contacted her about taking plaintiff to the emergency room. Statement, ¶39, n.2.

14

on a police officer, resisting arrest, and disorderly conduct.  To establish his constitutional claim for malicious prosecution, plaintiff must show that the defendants initiated criminal proceedings against him without probable cause and for an improper purpose, that the proceedings terminated in his favor, and the deprivation of a federally protected right.  See Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001); Meehan v. Town of Plymouth, 167 F.3d 85, 88-89 (1999).

As an initial matter, plaintiff's malicious prosecution claim against Morrison fails because there is no evidence that Morrison played any part in initiating criminal proceedings against him.  After consulting with supervising officers, Kinirey determined the charges to bring against LaFrenier, and initiated the criminal process against him.  Morrison signed the complaint in his administrative capacity as court prosecutor only.  Statement, ¶45.

As against Kinirey, plaintiff's claim for malicious prosecution fails because, as explained in detail in Section III-A, supra, probable cause existed to believe he committed each of these offenses.  See, e.g., Roche, 81 F.3d at 254 ("if probable cause to arrest and prosecute … existed, no unconstitutional deprivation occurred").  Moreover, plaintiff can offer no evidence of any "improper purpose" on Kinirey's part.  Finally, plaintiff identifies no federal right of which he was deprived due to his prosecution.  See Nieves, 241 F.3d at 54-55 (the stress and anxiety of serious criminal charges, loss of reputation, and numerous court appearances, including a trial, do not amount to a constitutional deprivation sufficient to ground Section 1983 malicious prosecution claim). Therefore, summary judgment should enter for the defendants on plaintiff's malicious prosecution claim.

    E.   The Defendants are Entitled To Qualified Immunity

Even if, arguendo, plaintiff could prove that Kinirey and/or Morrison engaged in unconstitutional conduct, the Complaint would still be subject to dismissal because the officers are entitled to qualified immunity from plaintiff's claims.

In reviewing a claim of qualified immunity, the Court considers: (1) whether at the time of the alleged conduct there was a "clearly established" constitutional right that was violated; and (2) whether a reasonable person in the defendants' position would have known that their conduct violated that constitutional right.  See Frazier v. Bailey, 957 F.2d 920, 929 (1st Cir.1992). Qualified immunity is "a shield to 'all but the plainly incompetent or those who knowingly violate the law.'"  Wagner v. City Of Holyoke, 404 F.3d 504, 508 (1st Cir.2005) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986)).

As noted throughout this Memorandum, the officers' actions in this case are virtually identical to actions that have passed constitutional muster in similar circumstances.  Specifically, as noted, the Court has found that probable cause justified an arrest, where the suspect committed conduct similar to plaintiff's conduct in this case.  See, e.g., Brown, 169 F.3d at 92; Bizier, 111 F.3d at 218-219; Nagle, 116 F.3d at 14.  Similarly, in circumstances akin to those here, the Court has approved the amount of force used by Kinirey and Morrison to effect the arrest of an unruly suspect.  See Gaudreault, 923 F.2d at 206.  Moreover, since the defendants' use of force accorded with the training they received, Statement, ¶¶46-47, they could not have known that such force was unreasonable.  Finally, as noted, the Court rejected a denial-of-medical-care claim in a case where the defendants showed far less concern for the suspect's medical needs than these defendants, and the plaintiff's injuries were far more serious than this plaintiff's.  See Gaudreault, 923 F.2d at 208.

16

As the Court has previously approved of actions similar to the defendants' actions in this case, no reasonable officer in the defendants' position would know that their actions violated any clearly-established constitutional right. Accordingly, Kinirey and Morrison are entitled to qualified immunity, to the extent their actions may be found wrongful at all. See Mitchell v. Forsyth, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816 (1985) (officials are immune unless, at the time of the incidents alleged in the Complaint, "the law clearly proscribed the[ir] actions").[5]

F. Plaintiff Cannot Establish Negligence Against the Town

Count V of the Complaint asserts that the Town is vicariously liable because the actions of the individual defendants were negligent. Complaint, ¶36. As an initial matter, the Court should "look not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts," and dismiss plaintiff's claim of negligence as unsupported by the Complaint, which asserts unconstitutional and intentional, rather than negligent, conduct. See, Schenker v. Binns, 18 Mass.App.Ct. 404, 406-407, 466 N.E.2d 131 (1984) (denying motion to amend complaint to add assault and battery claim based on conduct that was clearly negligent).

Moreover, plaintiff's claim for negligence fails for the same reason that his claims of unconstitutional conduct fail: that is, the officers' actions were reasonable. See Morgan v. Lalumiere, 22 Mass.App.Ct. 262, 493 N.E.2d 206 (1986) ("[n]egligence is the failure to exercise that degree of care which a reasonable person would exercise in the circumstances").

---

[5]This qualified immunity analysis applies to plaintiff's claims under both Section 1983 and the MCRA. See Kelley v. LaForce, 288 F.3d 1, 10 (2002).

17

As explained in Sections IV-A and IV-D, supra, the arrest and prosecution of plaintiff were justified by probable cause, which is defined as a reasonable belief that the suspect committed the offense for which he was arrested and prosecuted. See, e.g., Roche, 81 F.3d at 254. Where, as here, the arrest and prosecution of plaintiff surpasses the Fourth Amendment's reasonableness requirement, there is no basis for a claim that the officers failed to exercise reasonable care and were thus negligent in arresting, or prosecuting, plaintiff. See, e.g., Joyce v. Town of Tewksbury, 112 F.3d 19, 22 (1st Cir.1997) ("the ultimate touchstone [of the Fourth Amendment] is one of reasonableness").

Similarly, as noted, "the pertinent question" in plaintiff's claim for excessive force is whether the force used was "objectively reasonable," see Gaudreault, 923 F.2d at 205. Since, as explained in Section IV-B, supra, the defendants' use of force did not violate the Fourth Amendment's ban on excessive force, their actions were necessarily reasonable and, therefore, not negligent.

Finally, as explained in Section IV-C, supra, the defendants' actions with respect to seeking medical care for plaintiff were manifestly reasonable and, as such, cannot provide the basis for a negligence claim. Therefore, plaintiff's claim against the Town for negligence should be dismissed.

G. Plaintiff Cannot Establish His Intentional Tort Claims

Counts VI through VIII assert intentional tort claims against Kinirey and Morrison for assault and battery, false arrest, and abuse of process, respectively. The Court should dismiss each of these claims for the reasons set forth below.

1.   Assault and Battery (Count VI)

"[A]n officer authorized to make an arrest may use such force as is reasonably necessary to effect the arrest." Julian v. Randazzo, 380 Mass. 391, 396, 403 N.E.2d 931, 934 (1980); see also Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir.1991) ("the right to make an arrest … necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). Where an officer does not use excessive force to execute a lawful arrest, an assault and battery claim must fail. See Sietins v. Joseph, 238 F.Supp.2d 366, 380 (D.Mass.2003, Dein, MJ). As discussed in Sections IV-A and IV-C above, plaintiff's arrest was lawful, and the officers' use of force was reasonable. Accordingly, his assault and battery claim fails. Compare Sietins, 238 F.Supp.2d at 380 (dismissing assault and battery claim where probable cause existed for the arrest and plaintiff did not prove excessive force was used).

2.   False Arrest (Count VII)

The tort of false arrest appears to be cognizable only where a non-police officer executes the challenged arrest. See, e.g., Com. v. Colitz, 13 Mass.App.Ct. 215, 220 (1982) ("[i]f the citizen is in error in making the arrest, he may be liable in tort for false arrest"); Lane v. Worcester Mut. Ins. Co., 13 Mass.App.Ct. 923, 924 (1982) (tenant's claim for wrongful arrest by building security officer "appears to be based simply in tort for false arrest"); Joyce v. Hickey, 337 Mass. 118 (1958) (addressing claim for tort of false arrest against judge). As police officers executed the arrest here, it appears that plaintiff's tort claim for false arrest is not cognizable.

In any event, plaintiff's tort claim for false arrest should fail for the same reason that his constitutional claim for false arrest fails: That is, as discussed in Section IV-A, supra, probable cause existed, justifying the arrest.

    3.    <u>Abuse of Process (Count VIII)</u>

To prove the tort of abuse of process, plaintiff must show that process was used against him for an "ulterior or illegitimate purpose." <u>Vittands</u> v. <u>Sudduth</u>, 49 Mass.App.Ct. 401, 406, 730 N.E.2d 325, 332 (2000). "The essence of this tort is the malicious use of legal process to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." <u>Carroll</u> v. <u>Gillespie</u>, 14 Mass.App.Ct. 12, 26, 436 N.E.2d 431, 439 (1982). Plaintiff offers no facts evidencing any "ulterior purpose" on the part of Kinirey, the only officer who pursued criminal process against him. To the extent plaintiff claims Kinirey's ulterior purpose was to cover up his wrongful arrest, his claim is unavailing since, as discussed, plaintiff's arrest was lawful. Accordingly, plaintiff's claim for abuse of process must be dismissed.

IV.    <u>CONCLUSION</u>

For the foregoing reasons, defendants Mary Anne Kinirey, Daniel Morrision, and the Town of Townsend respectfully request that summary judgment enter in their favor, dismissing the Complaint in its entirety.

DEFENDANTS,

MARY ANNE KINIREY, DANIEL MORRISON and TOWN OF TOWNSEND,

By their attorneys,

<u>/s/Joseph L. Tehan, Jr.</u>
Joseph L. Tehan, Jr. (BBO # 494020)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
31 St. James Avenue
Boston, MA  02116
617-556-0007

269365/METG/0594

20