UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO: 04-40114-FDS

---

TIMOTHY L. LaFRENIER, )
          Plaintiff )
 )
v )
 )
MARY ANNE KINIREY, DANIEL )
MORRISON, The CHIEF OF POLICE )
"John Doe" and the TOWN OF )
TOWNSEND, )
          Defendants )

---

## MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### Introduction

As the Defendants' detail in their memorandum, Plaintiff LaFrenier filed suit alleging a number of civil rights violations and a number of common law torts.

In sum, this can be drawn from the LaFrenier's statement of facts, L.R. 56.1., filed herewith. Without a scintilla of trustworthy evidence, Defendant Kinirey, with Defendant Morrison, arrested LaFrenier for operating under the influence of alcohol. Once they realized their mistake, the officers concocted charges against LaFrenier, who had been injured in the arrest, in an effort to insulate themselves from a claim of false arrest and a claim of

1

excessive force in effectuating that arrest. The officers were plainly incompetent and knowingly violated the law. Turning to the law and the facts.

Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the initial burden of establishing that there is no genuine issue of material fact." Noel v. Kajic, 384 F.Supp.2d 447, 457 (D. Mass. 2005). Once that burden has been met, to advance the litigation, the non-moving party must "'establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the non-moving party.'" Noel v. Town of Plymouth, Mass., 895 F.Supp. 346, 350 (D. Mass. 1995) quoting Rogers v. Fair, 902 F.2d 140, 143 (1st. Cir. 1990)(citations omitted). In deciding on the existence of such a fact, "a court must view the available evidence in a light most favorable to the non-moving party and draw all reasonable inferences in the non- movant's favor." Blackstone v. Quirino, 309 F.Supp.2d 117, 124 (D. Me. 2004). "[S]ummary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant's witnesses."

2

TypeRight Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1159 C.A.Fed. (Cal. 2004). "The district court's ultimate concern is to ascertain 'whether there is a need for a trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may be resolved in favor of either party.'" Clynch v. Chapman, 285 F.Supp. 213, 224 (D. Conn. 2003)quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). That, submits LaFrenier, is where we find ourselves at bar.

Probable Cause

LaFrenier's arrest for operating under the influence of an intoxicating liquor was made absent probable cause in violation of the Fourth Amendment to the United States Constitution. "[P]robable cause to perform a warrantless arrest turns on whether at the moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man that a crime was being committed. Vagas-Badillo v. Diaz-Torres, 114 F.3d 3,6 (1st Cir.1997) quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed 2d (1964). No prudent police officer would have believed that there was probable cause to arrest LaFrenier for operating under the influence of an intoxicating liquor on the facts known to Kinirey at the time she arrested LaFrenier for that offense.

These are the relevant facts as the unfolded before Kinirey.

3

At approximately 12:40 p.m. on Friday, June 15, 2001, a motorist walked into the Townsend police station and told Officer Mary Anne Kinirey (and a dispatcher) that there was a "gentleman who wasn't feeling well -- looked like he wasn't feeling well" -in a car on the side of the road.  Kinirey located the car; it was parked "just off the side of the road....off the side of the road as somebody had just turned off to the side of the road."  To this point, there is evidence that the driver of the car (LaFrenier) is sick, inferential evidence that he had driven his car without difficulty, no evidence that he had driven erratically, and no evidence that he had had anything to drink.  The time of the day - early in the afternoon, and day of the week - typically a work day - also cut against the notion LaFrenier had had anything to drink, let alone that he was intoxicated.

When Kinirey first saw LaFrenier he was "sweating profusely."  He also was "pale."  He was trying but failing to open a cigarette pack.  To Kinirey, he "seemed a little confused."  Kinirey knew that a profuse perspiration and a pale hue are not signs of intoxication.  She also knew, moreover, through her "first responder" training, that profuse sweat and a confused state accompany a diabetic reaction. As she testified, she thought that maybe LaFrenier was a diabetic.  At this point there is strong evidence that LaFrenier is suffering from some illness.  That LaFrenier appeared confused has meaning only in context;

considering all of the relevant facts and circumstances, LaFrenier's confusion had to result from his illness and nothing else.

When LaFrenier spoke to Kinirey through the open window of the driver's door, she did not smell an odor of alcoholic beverage. And she saw alcoholic beverage containers in the car. LaFrenier's speech was understandable, but slow. His eyes were neither bloodshot nor red; according to Kinirey, they were glassy.[3]

The absence of an odor of alcoholic beverage is compelling evidence that LaFrenier had not been drinking. And it is thoroughly inconsistent with the notion that LaFrenier was intoxicated. There is only one conclusion on this evidence, LaFrenier was ill. The evidence does not even hint at another conclusion.

That LaFrenier would have fallen to the ground three separate times had not something or someone intervened, has, considering the totality of the circumstances, only one meaning; he was very ill. To mistake LaFrenier's total inability to control his body as a sign of intoxication was gross incompetence. No reasonably competent officer, standing in Kinirey's shoes, would have made that blunder. There was no probable cause for LaFrenier's arrest[4]

---

[3] Kinirey did not write this in her police report.

[4] <u>Massachusetts Civil Rights Act</u>
"A claim that an arrest was made without probable cause or with excessive force is actionable under Mass. Gen. L. ch. 12, §§ 11 I."

5

and no arguable probable cause for his arrest.[5]

### Excessive Force

Whether or not one believes Kinirey's and Morrison's accounts of what happened at the scene, the instant case still presents trial worthy issue on the question of whether excessive force was used against LaFrenier in effectuating his arrest.

"Under the Fourth Amendment, a law enforcement officer may use 'such force as is reasonably necessary to effect an arrest.'" Noel v. Town of Plymouth, Mass 895 F.Supp. 346, 352 (D. Mass.)(1995); quoting United States v. McQueeney, 674 F.2d 109, 113 (1st Cir. 1982). "'Determining whether the force used to effect a particular seizure is reasonable...requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'" Jarret v. Town of Yarmouth, 331 F.3d 140, 148 C.A. (Mass.)(2003) quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(internal quotation marks omitted). Contemplating whether the force used trenches upon constitutional protections is a "fact intensive inquiry that is highly sensitive to the circumstances of the particular case." Jarret v. Town of Yarmouth, 331 F.3d 140, 148 C.A. (Mass.)(2003).

---

Noel v. Town of Plymouth, Mass 895 F.Supp. 346, 355 (D. Mass.)(1995)

[5] This will be discussed later in the context of qualified immunity.

Significant facts at bar raise a genuine issue as to whether the Kinirey and Morrison used excessive force in arresting LaFrenier.

These uncontested facts indicate that LaFrenier was physically incapable of putting up any resistance to either Kinirey or Morrison.  First, LaFrenier was too ill to drive.  Driving is less physically taxing than even walking, yet LaFrenier could not manage it.  LaFrenier was without the small amount of manual dexterity required to open a cigarette pack.  LaFrenier, at times, could not even stand.  How much force is needed to arrest a person who cannot stand under his own power.  These facts argue that only the smallest amount of force was needed to place LaFrenier under arrest.

Much more force than that was used, however.  LaFrenier was sore from head to toe.  Kinirey had used her nightstick on him.  LaFrenier could hardly walk as he left the hospital.  He had bruises on his legs, his arms, and his wrist, and he had swelling, as well.  The handcuffs caused him extreme pain, and he asked Kinirey to loosen them.  There was numbness in wrist and a tingling in his thumb.  His jaw was very tight.  He felt like he had been beaten.  It took two to three months for his injuries to resolve.  At bar, the is a legitimate issue as to whether LaFrenier fell victim to the application of excessive force.  Here, a jury ought to make the final determination.

The argument above puts to one side that a reasonably

competent police officer would have known that LaFrenier was suffering from an illness. And, it also puts to one side the argument that Kinirey and Morrison contrived the assault and battery charges, the resisting arrest charge, and the disorderly person charge. LaFrenier now incorporates those arguments, thus providing additional bases on which to conclude that he was the victim of force excessively applied.

Assault and Battery

"Assault and battery is defined as the 'intentional unjustified use of force upon the person of another, however slight or the intentional doing of a wanton or grossly negligent act causing personal injury to another.'" Noel v. Town of Plymouth, Mass 895 F.Supp. 346, 354 (D. Mass.)(1995) quoting Commonwealth v. McCan, 277 Mass. 199, 203 (1931). As there is a genuine issue of material fact on the excessive force claim, LaFrenier's allegation that he was the victim of an assault and battery is also trial worthy.

Qualified Immunity; Reasonably Competent Officer

"'Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gross v. Bohn, 782 F.Supp.173, (D.Mass.1991) quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity

8

cannot protect an officer from liability if, on an objective basis, no reasonably competent police officer would have acted as he did. <u>Nolan v. Krajic</u>, 384 F.Supp.2d 447, 465 (D.Mass.)(2005). Also, qualified immunity is not for those who knowingly violate the law. <u>Blackstone v. Quirino</u>, 309 F. Supp.2d 117, 128 (D.Me.)(2004). Both principles are in play at bar.

Whether a state actor is entitled to qualified immunity turns on three factors:

> (1) whether the plaintiff's allegations if true establish a constitutional violation; (2) whether the constitutional right was clearly established at the time of the putative violation; and (3) whether a reasonable officer, situated similar to the defendants, would have understood the challenged act or omission to contravene the discerned constitutional right. <u>Nolan v. Krajic</u>, 384 F. Supp.2d 447 (D. Mass. 2005).

The first two factors can be dealt with summarily. LaFrenier alleges that he was arrested without probable cause; this asseveration if true establishes a violation of the Fourth Amendment to the United States Constitution. <u>Wilson v. City of Boston</u>, 421 F.3d 45, 54 (1st Cir. 2005). At the time of LaFrenier's arrest, it was clearly established that an arrest without probable cause was a constitutional violation. <u>Santiago v. Fenton</u>, 891 F.2d 373, 386 (1989). The bone of contention, at bar, comes with the last consideration: whether a reasonably competent officer, standing in Kinirey's shoes, would have known that there was no probable cause to arrest LaFrenier for driving under the influence

of an intoxication liquor. As discussed earlier, no reasonably competent officer would have thought on the facts presented to Kinirey that LaFrenier was operating a motor vehicle under the influence of an intoxication liquor. The question of probable cause is not arguable at bar; probable cause clearly did not exist. Qualified immunity, as the term states, is not absolute. LaFrenier ought to have his day in court.

Qualified Immunity; A Knowing Violation

"[F]alsifying facts to establish probable cause is patently unconstitutional and had been long before [LaFrenier's arrest in 2001]." Kingsland v. City of Miami, 382 F.3d 1220, 1231 (C.A. 11 Fla. 2004). Once Kinirey realized that she had made inexcusable mistake, she and Morrison concocted charges against LaFrenier in an attempt to insulate themselves from a claim of false arrest and a claim of excessive force in effectuating that arrest.

It can be readily inferred that Kinirey and Morrison knew before they left the scene that one or both of them had injured LaFrenier. They also knew that neither one of them had suffered even the slightest injury. The injuries sustained by LaFrenier could be plausible explained away, however; they had to handle a drunkard. That rationale went by the wayside, though, with LaFrenier's first blow into the breathalyzer machine. And therein is the crucial turning point. Now Kinirey and Morrison had a man injured at their own hands who was not only not intoxicated, but

10

stone cold sober and quite ill. Plus, they had no charge. One can understand why the room went "dead [silent]."

After the second test result, Kinirey, Morrison and Johnson gathered, and conferred on the charges that would be brought against LaFrenier.

Charges were lodged against LaFrenier in an a complaint issued from the Ayer District Court on June 18, 2001.

Kinirey's account of events in material respects is incredible. Kinirey's claim that she and LaFrenier were wrestling on the ground is not believable. If LaFrenier could not stand under his own power, he could not have brought Kinirey to the ground. That Kinirey fabricated the wrestling story is also shown by the fact that she incurred not even the slightest physical harm. And yet another indication that this story is false, is that Kinirey did mention it in her police report.

Further still, Kinirey and Morrison provided inconsistent accounts of how LaFrenier committed an assault and battery on Morrison.

Morrison's account of his interaction with LaFrenier the scene also bespeaks contrivance. Morrison moved LaFrenier three feet. In that three feet, Morrison states, LaFrenier slipped away from him and elbowed him twice in the chest. Morrison, 6'3", 250 lbs. could bench press 350 lbs. To think that LaFrenier, in his state, could free himself from Morrison is incredible.

11

Moreover, there is no mention in Kinirey's police report of an assault and battery on Morrison. And Morrison was not present on the trial date.

"[S]ummary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant's witnesses." TypeRight Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1159 C.A.Fed. (Cal. 2004). At bar there is a genuine issue at whether Kinirey and Morrison are telling the truth regarding their physical interaction with LaFrenier. Should a jury disbelieve the officers, there is ample remaining evidence on which LaFrenier can make out his claims.

As there is a genuine issue as to the officers' credibility on crucial questions of fact concerning the lawfulness of their arrest and in their motivation for charging LaFrenier, LaFrenier's false arrest claim, false imprisonment claim, malicious prosecution claim, and abuse of process claim survive summary judgment.[6]

LaFrenier also submits that facts pertaining to his treatment by the officers create a genuine issue of material fact on the question of whether G.L. c. 258 was violated.

LaFrenier respectfully submits that the court ought to deny the defendants' motion for summary judgment.

---

[6] This claim survives in its common law form.

Plaintiff
Timothy L. LaFrenier
By his attorney


Respectfully submitted


/s/ Sean J. Gallagher
_____
Sean J. Gallagher, Esq.
74 Elm Street
Worcester MA 01609
Tel. no. 508 767-0500
B.B.O. no. 551112
Date: February 15, 2006